STANLEY RULE & LEVEL CO. v. OHIO TOOL CO.

(Circuit Court, N. D. New York. May 16, 1902.)

PATENTS—INVENTION—PLANE IRONS.

The Schade patent, No. 473,087, for an improvement in plane irons, designed to render them less liable to crack in hardening and tempering, and to enable them to be worn down farther than in the old style, shows only mechanical skill, and is void for lack of patentable invention.

In Equity. Suit for infringement of letters patent No. 473,087, granted to Edmund Schade April 19, 1892, for a plane iron. On final hearing.

This is an action founded upon letters patent No. 473,087, granted April 19, 1892, to the complainant, as assignee of Edmund Schade, for an improvement in plane irons. The patentee says:

"My invention relates to improvements in plane irons; and the objects of my improvement are to facilitate the manufacture of the plane iron, to improve its quality when made, and to make the plane iron capable of being worn down farther than the old style of iron used in connection with certain planes. * * * By my improvement I adapt the plane iron to be worn down closer than in the ordinary plane iron and to operate in connection with the laterally adjusting lever until the plane iron is completely worn out. By making the circular enlargement at the end of the slot, which is nearest the cutting edge, I am enabled to make the plane irons by pressing them out from sheet steel and to harden and temper them to a point up to or beyond the lower edge of this circular enlargement with less liability of cracking the plane irons at this point, so that fewer irons are lost in hardening and tempering, and they are less liable to become cracked or broken at said point after they are put into use. This is because there are no angular notches at the lower end of the slot from which a crack will start, and because the slot opens into the circular enlargement, so that it is less liable to strain in the expansion and contraction of the metal during the hardening and tempering process. Care is generally taken in hardening the ordinary plane bit not to harden it quite up to the slot; but by my improvement such care is not necessary."

The claim is as follows:

"In a plane, the combination of a plane iron having a longitudinal slot, 4, with the circular enlargement at its lower end, said slot extending up near to the upper end of the bit without any enlargement at said upper end, and a laterally adjusting lever having a projecting part fitted to work in the upper end of said slot, substantially as described, and for the purpose specified."

The defenses are want of patentability, public use for more than two years prior to the date of the application and noninfringement.

Mitchell, Bartlett & Brownell (John P. Bartlett, of counsel), for complainant.

Frederick I. Allen and William A. Megrath, for defendant.

COXE, District Judge (after stating the facts). The art to which this patent belongs is very old. Hand planes were used by the Romans before the Christian era. In its essential features the plane of to-day is what it was 2,000 years ago. Such changes as have taken place were made necessary by progress in other arts and the slow evolution of centuries. No fundamental invention ever has been or ever can be made in the hand plane. The improvements which have taken place have related to matters of detail and in most instances have required only the skill of the calling. The patent in suit describes and claims such an improvement. The gist of the improvement relates to the location of the circular enlargement, through which the holding screw passes, at the lower, instead of the upper, end of the longitudinal slot of the plane iron. Prior to the Schade patent the large screw opening had usually been located at the upper end of the slot of the plane iron. Schade simply reversed the old slot so that the enlargement is at the lower instead of the upper end. In every other respect

the plane iron, the cap iron and the adjusting device are identical with those of prior structures. It is said that this change produces two new results: First. The absence of angular notches in the circular opening lessens the liability to crack and break the plane iron when subjected to the hardening and tempering process. Second. The absence of the large opening at the upper end of the slot enables the friction roller of the adjusting device to engage the sides of the slot to its extreme upper end, and in this way the plane iron can be used until it is completely worn out. Assuming that the absence of angular notches prevents cracking, when the steel is tempered after the slot has been cut, as stated in the specification, there can be no invention in making the end of the slot circular because Markee, Bailey and Baecker all show slots with circular ends and no notches. The location of the enlargement at the lower end of the slot permits the plane iron to be worn down closer than in most of the structures shown in the record, but it would seem that the change is one that did not require anything more than the ingenuity of the skilled mechanic. The idea of saving as much steel as possible was not new with Schade. That such economy is desirable would appear to be obvious, but Baecker, in 1877, expressly recognizes its importance by referring to a bit which "may be sharpened until its length is so diminished that it can no longer be supported in the stock." Various methods of accomplishing this result naturally suggest themselves to the competent workman. Smith, in 1878, describes a plane iron having the usual slot and says, "A circular enlargement is sometimes made of the slot, B, near one or the other end; but this is not claimed here as original." Smith also says that if the circular enlargement is present the arms of his thumbscrew pass through the slot. If the screw is removed in the Smith, or in the Schade, device, there is no necessity for the circular enlargement through which the large screw head passes. Although it is, perhaps, more convenient to have the screw remain in the cap, it is clear that by taking out the screw entirely, when it is desired to separate the cap and bit, a slot might be used which is uniform in width from top to bottom and in which the adjusting device would operate to the extreme upper end of the slot. Again, if the slot be long enough, the enlargement may be made at the upper end with sufficient space below it to allow the adjusting roller to operate until the cutting blade is used up; indeed, several of the slots in both complainant's and defendant's bits appear to be long enough to permit this to be done. Baecker shows a method of producing the desired result by means of a bit having a slot open at its upper end, and Gage shows still another. The Gage patent states, what the court has endeavored to point out, that "other forms of lever connections may be employed with the cutter, or the adjustment may be made by means of lateral screws, or a screw may be employed, extending downward and forward, to operate an eccentric in connection with the cutter. Many devices to effect this lateral adjustment of the cutter plate will occur to those skilled in the art." Bailey and Nicht produced similar results by locating the enlargement in the lower end of a slot in the cap so as to allow the head of the screw to pass through it and rest on its upper surface. Schade shows one way of accomplishing a result

which was accomplished by others in several different ways prior to his patent. Schade's device may be an improvement upon the prior devices, but, if so, it is only in degree. The problem is so simple and may be solved in so many different ways that invention cannot be predicated of its solution in one particular way. The court is unable to resist the conclusion that Schade's achievement was only what might be expected from a clever mechanic, and that no new result, such as is contemplated by the patent law, was attained thereby.

The bill is dismissed.